**Electronically Filed
Intermediate Court of Appeals
CAAP-11-0000704
21-NOV-2014
11:18 AM**

NO. CAAP-11-0000704

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

T.W., nka T.A., Plaintiff-Appellant,
v.
D.W., Defendant-Appellee.

APPEAL FROM THE FAMILY COURT OF THE THIRD CIRCUIT
(FC-D NO. 06-1-007K)

SUMMARY DISPOSITION ORDER
(By: Foley, Presiding Judge, Leonard and Ginoza, JJ.)

Plaintiff-Appellant T.W. (Wife) appeals from an Amended Judgment of Divorce (Amended Judgment) filed on August 25, 2011, in the Family Court of the Third Circuit[1] (family court). In doing so, Wife challenges parts of the family court's Findings of Fact and Conclusions of Law (FOF/COL) entered July 5, 2011.

This is the second appeal in this case. Wife and Defendant-Appellee D.W. (Husband) were married on February 26, 1994 (date of marriage or DOM), and completed their divorce trial on October 19, 2006 (the date of completion of evidentiary part of trial or DOCOEPOT). In the first appeal, after the family court filed its Divorce Decree, Wife appealed and Husband cross-appealed. This court issued a Memorandum Opinion, affirming on a number of grounds and remanding four narrow issues to the family court. Doe v. Roe, No. 28596, 2010 WL 2535138 at *6-8, 10, 123 Hawai'i 299, 233 P.3d 719 (App. June 23, 2010) (mem.). Upon

---

[1] The Honorable Aley K. Auna, Jr. presided.

remand, the family court filed the FOF/COL and the Amended Judgment.[2]

In this appeal, Wife makes a series of challenges related to the credits given in the family court's property division, and contends that the family court erred when it (1) recalculated Husband's obligations as to a San Francisco, California condominium (condo) in which he has a fifty percent ownership interest; (2) failed to value the couple's grand piano and identify a proper equalization amount; (3) improperly awarded Husband a category 1 capital contribution credit for an employment benefit existing at DOM that did not exist at DOCOEPOT; (4) failed to consider the tax consequences of the property division; and (5) failed to specify in the Amended Judgment that interest should accrue from the date of the Amended Judgment and not the original Divorce Decree.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, as well as the relevant legal authorities, we affirm.

**(1) San Francisco Condo** Wife argues that the family court erred in calculating Husband's obligations related to the San Francisco condo, as well as the impact of improvements on the condo's net market value. We construe this point of error as a mixture of fact and law, which we review under the clearly erroneous standard. <u>Chun v. Bd. of Trs. of Employees' Ret. Sys. of the State of Hawai'i</u>, 106 Hawai'i 416, 430, 106 P.3d 339, 353 (2005).

At the DOM and DOCOEPOT, Husband and his sister (Sister) each owned half of the condo. Since 1983, Husband has not paid any money to maintain the property. Sister paid off the

---

[2] This court's Memorandum Opinion did not order an evidentiary hearing on remand and neither party requested one. After a telephone conference, Judge Auna signed a stipulated order requiring the parties to file proposed findings of fact and conclusions of law addressing the four issues remanded by this court and responses to each other's proposed findings and conclusions.

$35,000 mortgage and spent at least $220,000 maintaining and improving the property, both before and after the DOM between Husband and Wife. The family court determined that fairness required Husband to pay his Sister half of what she had spent on the property, and calculated Husband's interest in the condo accordingly.

On remand, this court directed the family court to revisit its calculations as to the condo, to the extent possible, so that: (1) the amounts Sister incurred prior to DOM are accounted for in the category 1 value and the amounts Sister incurred after DOM are considered in determining the category 2 value; and (2) the improvements to the property are calculated according to the change in value to the property and not the cost of the improvement.[3] Doe, 2010 WL 2535138, at *5. Wife disagrees with the family court's recalculations as to both issues, even though Husband's obligation to Wife increased by $57,181 (from $29,750 to $86,931).[4]

The family court did not err in recalculating Husband's obligations to Sister because it properly deducted the amounts incurred before DOM from the category 1 value, and amounts incurred after from the category 2 value. The record indicates

---

[3] The Memorandum Opinion distinguished between "maintenance expenses" and "improvements," concluding that:

> For basic maintenance of the property -- i.e. mortgage payments, property taxes and homeowners association fees -- it is not error to utilize the cost amount because these types of payments maintain (rather than increase) the ownership interest. However, as to improvements -- such as the interior remodeling in 1998 -- the change in value to the property, as opposed to costs, is the appropriate consideration.

Doe, 2010 WL 2535138, at *5 n.11.

[4] Wife also attempts to argue that Husband does not owe Sister anything because the parties stipulated to the DOM and DOCOEPOT values of the property which the family court could not reduce on the basis of "equity." This issue was not before the family court on remand. This court determined that it was within the family court's discretion to conclude that Husband owes half of all of the debt and costs paid for by Sister on equitable principles. Doe, 2010 WL 2535138, at *4.

3

that Sister's contributions before DOM consisted of: renovating the bathroom in 1988 (cost of $21,000), remodeling the kitchen in 1989-90 (cost of $40,000), and paying off the mortgage ($35,000), in addition to property taxes and homeowners' association fees. Sister's contributions after DOM included: assessments for the exterior remodeling of the building in 1995 (cost of $9,000), interior remodeling in 1998 (cost of $16,000), and property taxes and homeowners' association fees. Because there is substantial evidence in the record to support the family court's determinations, they are not clearly erroneous.

Second, the family court did not err in finding that "the improvements (bathroom renovations, kitchen remodeling, and interior remodeling) most likely added value at least equal to the associated expenditure." Wife argues that the family court ignored this court's mandate in the prior Memorandum Opinion to "account for improvements based on their impact to the value of the property[ ]" Doe, 2010 WL 2535138, at *5, rather than their dollar amounts. The Memorandum Opinion added, however, that "[i]f the evidence does not allow the family court to make such a determination, the court may rely on its broad discretion to determine a just result." Doe, 2010 WL 2535138, at *5. On remand, the family court found that "[t]here is nothing in the record with respect to the impact of the improvements . . . on the value of the [condo]." Because the parties did not present any evidence as to the impact of the improvements, the family court acted within its discretion in relying on the costs of the improvements, and was not clearly erroneous.

**(2) Grand Piano** Wife argues that the family court should have given a specific equalization amount in the event one party decided to keep the couple's grand piano. The family court's failure to give a dollar amount was not erroneous.

In its Amended Judgment on remand, the family court provided that:

> The Bosendorfer grand piano shall be offered for sale at the best possible price, and the net proceeds divided equally, provided however, either party may purchase the piano from

> the other party for an amount equal to one half of any bona fide offer received for the purchase of the piano from a qualified third-party, and in the event that each party proposes to purchase the piano based on a bona fide offer, it shall go to the party who offers more.

(Quotation marks omitted.)

Wife argues that the family court should have issued an equalization amount as there was "ample evidence in the record to enable the court to exercise its discretion" and "both parties agree the DOCOEPOT value of the piano is (at a minimum!) $70,000." However, the record does not reflect agreement between the parties with respect to the value of the piano. Thus, the family court properly exercised its discretion when it provided the parties with the option of selling the piano and splitting the proceeds, or for one party to purchase the piano from the other in the amount of one half of a bona fide offer from a third-party. In short, the family court has addressed what should happen if one party chooses to keep the piano.

**(3) Husband's Employment Benefit** Wife argues that the family court erred in failing to adjust Husband's capital contribution credit despite the court's ultimate finding that Husband's employment benefit no longer existed at the DOCOEPOT.

In its initial distribution of the marital estate, the family court gave Husband a $116,886 category 1 contribution credit for a termination benefit he was entitled to under his employment contract with Clinical Labs of Hawaii (CLH) which existed at DOM. In the prior Memorandum Opinion, this court acknowledged that although the family court correctly determined that Husband's benefit was a valid category 1 credit, the court should have determined the appropriate DOCOEPOT value, if any, of the benefit. Doe, 2010 WL 2535138, at *7. On remand, the family court found that Husband had terminated his employment with CLH well before DOCOEPOT. The family court thus concluded that "[a]t the time of the divorce no termination benefits were still due to [Husband] on account of his previous employment with CLH."

5

Wife argues that the family court should have made the necessary finding that "the DOCOEPOT value was zero" and that the logical conclusion was that "therefore Husband is not entitled to a Category 1 capital contribution credit at DOM greater than its value at DOCOEPOT."

Wife's reliance on <u>Wong v. Wong</u>, 87 Hawai'i 475, 960 P.2d 145 (App. 1998) is misplaced. The rule articulated in <u>Wong</u> reads:

> If [a] specific Category 1 property has been separately owned continuously from the DOM to the DOCOEPOT, and the [net market value (NMV)] of that property on the DOCOEPOT is no greater than its NMV on the DOM, then its value includable in Category 1 is its NMV on the DOCOEPOT.

<u>Id.</u> at 483, 960 P.2d at 153. Here, Husband did not own the CLH termination benefit "continuously from the DOM to the DOCOEPOT" -- rather, the family court found that Husband ended his employment with CLH well before DOCOEPOT.

The applicable precedent, as expressed by this court in <u>Helbush v. Helbush</u>, 108 Hawai'i 508, 122 P.3d 288 (App. 2005) provides:

> A party is entitled to a Category 1 net market value ("NMV") capital contribution credit for an asset owned at the time of marriage . . . <u>even if the asset no longer exists</u>. However, if the asset is still owned, and it has diminished in value, the capital contribution credit is limited to its current value.

<u>Id.</u> at 517, 122 P.3d at 297 (emphasis added) (block quote format altered). In this case, Husband's CLH termination benefit no longer existed at DOCOEPOT. Under prevailing precedent, Husband was entitled to the category 1 credit.

**(4) Tax Consequences of Property Division** Wife argues that the family court erred in failing to consider the tax ramifications of the property division and equitably deviate from the partnership model such that "Wife shall not owe a property equalization payment to Husband."

This court previously determined that because Wife was required to pay a $437,000 property equalization payment to Husband and the only substantial asset awarded to Wife was a $1,151,346 Fidelity stock account, "the sale of marital

partnership property [by Wife] is implicitly ordered" and "the family court must consider the tax ramifications of the sale." Doe, 2010 WL 2535138, at *8 (quoting Jackson v. Jackson, 84 Hawai'i 319, 334, 933 P.2d 1353, 1368 (App. 1997)) (quotation marks omitted).  On remand, the family court concluded:  "It would not be just and equitable to adjust the overall divorce property division on account of the possibility that [Wife] might owe capital gains taxes in connection with the liquidation of assets to fund her property division obligations to [Husband]."

In its FOF, the family court emphasized that the absence of evidence regarding the "actual tax impact" that would result from Wife's stock sale (FOF no. 25), noted that there was "no basis in the record to determine the gain, if any, associated with the securities awarded to [Wife]" (FOF no. 26), determined that "[t]he only evidence in the record suggests that, generally, any gains would be relatively small[]" (FOF no. 27), and found that any taxes would be affected by "existing and future tax rates, and all other tax relevant aspects of [Wife's] personal financial situation at the time, all of which are at this point entirely speculative[]" (FOF no. 28).  The family court stressed that Wife, as "the proponent for a credit for tax consequences, if any, . . . bore the burden of producing evidence of them, which she did not do."

In her proposed findings, Wife asked the family court to take judicial notice of the prevailing state and federal tax rates, and asserted that "[t]he evidence presented at trial was that the parties' Fidelity stock portfolios contained both short and long-term capital gains."  Based on this alone, Wife urged that the family court "must conclude that Wife has incurred considerable capital gain tax consequences from the sale of her Fidelity stock account[]" and that therefore "Wife shall not owe a property equalization payment to Husband in any amount." Because Wife made no attempt to even estimate the taxes associated with the stock transaction, she failed to meet her burden.

7

Based on the record, the family court did not err in deciding that Wife's possible tax consequences did not warrant deviation from marital partnership principles or reduction of her equalization payment.

**(5) Date of Interest Accrual** Wife argues that the family court erred when it issued its Amended Judgment (filed August 25, 2011) by leaving intact the provision of the original Divorce Decree that Wife owes statutory interest on the judgment dating back to the date of the original Divorce Decree (filed May 24, 2007). The Amended Judgment reduced Wife's equalization payment from $437,300 to $380,119 and provided that "[i]nterest on past due amounts shall accrue interest at ten percent (10%) per annum." Wife asserts that she has accrued $152,047.60 in interest to date and that "[i]nterest should commence to run only after all legal issues are resolved and the judgment on which the interest is based is a final judgment."

First, we agree with Husband that Wife implicitly waived this issue by failing to object to Husband's proposed findings, which requested language that "[i]n all other respects, the provisions of the Divorce Decree as previously entered by the Family Court shall remain in force and effect." In her proposed findings and conclusions to the family court, Wife did not ask for interest to run from the Amended Judgment forward.

Second, Hawai'i Rules of Appellate Procedure (HRAP) Rule 37 provides that:

> Unless otherwise provided by law, if a judgment for money in a civil case is affirmed, whatever interest is allowed by law shall be payable from the date the judgment was entered in the circuit or district court. If the judgment is modified or vacated with a direction that a judgment for money be entered in the circuit or district court, the notice and judgment on appeal shall contain instructions with respect to allowance of interest.

"When the judgment is affirmed in part, the portion of the judgment that is affirmed accrues interest from the date the judgment was originally entered in the court below." Richards v. Kailua Auto Mach. Serv., 10 Haw. App. 613, 625, 880 P.2d 1233, 1239-40 (1994). "Fairness dictates this result because

8

calculating interest from the date of the second judgment would penalize appellees for the trial judge's error." Id. at 625-26, 880 P.2d at 1240 (citation, internal quotation marks and brackets omitted). In this case, this court has affirmed the vast majority of the 2007 original Divorce Decree and thus interest from the date of the 2007 decree, on the amounts set forth in the Amended Judgment, are appropriate.

Therefore,

IT IS HEREBY ORDERED that the Findings of Fact and Conclusions of Law filed on July 5, 2011 and the Amended Judgment of Divorce filed on August 25, 2011, in the Family Court of the Third Circuit are affirmed.

DATED: Honolulu, Hawai'i, November 21, 2014.

On the briefs:

Michael S. Zola
for Plaintiff-Appellant

William C. Darrah
Peter Van Name Esser
for Defendant-Appellee

Presiding Judge

Associate Judge

Associate Judge